UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

January 5, 2018

LETTER TO COUNSEL

    RE:   *Kenneth Dale Moyers v. Commissioner, Social Security Administration*;
            Civil No. SAG-17-357

Dear Counsel:

On February 7, 2017, Plaintiff Kenneth Dale Moyers petitioned this Court to review the Social Security Administration's final decision to deny his claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). [ECF No. 1]. I have considered the parties' cross-motions for summary judgment, Plaintiff's reply, and the Commissioner's surreply.[1] [ECF Nos. 17, 18, 19, 21]. I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). This Court must uphold the decision of the Agency if it is supported by substantial evidence and if the Agency employed proper legal standards. *See* 42 U.S.C. § 405(g); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny Plaintiff's motion, grant the Commissioner's motion, and affirm the Commissioner's judgment pursuant to sentence four of 42 U.S.C. § 405. This letter explains my rationale.

Mr. Moyers filed claims for DIB and SSI on February 28, 2013, alleging a disability onset date of December 22, 2011. (Tr. 217-24, 225-30). His claims were denied initially and on reconsideration. (Tr. 77-86, 87-96). A hearing was held on August 3, 2015, before an Administrative Law Judge ("ALJ"). (Tr. 44-76). Following the hearing, the ALJ determined that Mr. Moyers was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 21-38). The Appeals Council denied Mr. Moyers's request for further review, (Tr. 1-7), so the ALJ's decision constitutes the final, reviewable decision of the Agency.

The ALJ found that Mr. Moyers suffered from the severe impairments of "[a]bove elbow amputation of the non-dominant arm, and obesity." (Tr. 24). Despite these impairments, the ALJ determined that Mr. Moyers retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except could occasionally lift and[/]or carry 20 pounds and frequently lift and[/]or carry 10 pounds, stand or walk for a total of 6 hours in an 8-hour workday, sit for a total of 6 hours in an 8-hour workday, push or pull, as much as she can lift and[/]or carry, frequently climb ramps or stairs, never climb ladders, ropes or scaffolds, occasionally balance, with no limitation on stooping, kneeling, crouching, and occasionally crawling. The claimant cannot reach in any direction with non-

---

[1] The Commissioner's unopposed Motion for Leave to File Surreply Memorandum [ECF No. 21] is GRANTED.

> dominant hand or arm and cannot handle, finger, feel with non-dominant hand, but has no such limitation on the dominant upper extremity. The claimant can tolerate occasional exposure to hazards such as moving mechanical parts and unprotected heights and can occasionally operate a motor vehicle. The claimant can constantly understand, remember and carry out instructions concerning simple tasks, occasionally understand, remember and carry out instructions concerning detailed tasks, constantly make simple decisions, occasionally make detailed decisions, and may have occasional interaction with supervisors, coworkers, and the public.

(Tr. 26). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Mr. Moyers could perform several jobs existing in the national economy and therefore was not disabled. (Tr. 37-38).

Mr. Moyers raises two arguments on appeal: (1) that the ALJ erred by determining that his mental health impairments were non-severe; and (2) that the ALJ failed to support his RFC assessment with substantial evidence. Each argument lacks merit and is addressed below.

First, Mr. Moyers argues that the ALJ erroneously determined that his mental health impairments were non-severe. Pl. Mot. 8-15. Specifically, Mr. Moyers contends that: (1) the "totality of the record did show that [his] mental health conditions of depression, PTSD, and anxiety would cause more than a minimal impact on his ability to perform basic work activities," *id.* at 12; and (2) the ALJ only cited to non-medical evidence, *id.* at 14. Social Security regulations provide that "a claimant's mental impairment should be found non-severe when it results in no or mild limitations in the [] functional areas and in no episodes of decompensation." *Jackson v. Comm'r, Soc. Sec. Admin.*, JMC-15-3236, 2016 WL 4435520, at *3 (D. Md. Aug. 22, 2016) (citing 20 C.F.R. § 404.1520a(d)(1)). Pursuant to the Social Security regulations, the ALJ must employ the "special technique" when evaluating the severity of a claimant's mental impairment. 20 C.F.R. § 1520a; *see also Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 659 (4th Cir. 2017). If the ALJ concludes that a mental impairment exists, he "must specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s) and document [his] findings." *Patterson*, 846 F.3d at 659 (quoting § 404.1520a(b)(1)). Additionally, the ALJ must document "'a specific finding as to the degree of limitation in each of' the four areas of functional limitation listed in § 404.1520a(c)(3)," including: (1) activities of daily living, (2) social functioning, (3) concentration, persistence, or pace, and (4) episodes of decompensation. *Id.* (quoting § 404.1520a(e)(4)).

Here, the ALJ found that Mr. Moyers's "medically determinable mental impairment of depression and [PTSD] d[id] not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere." (Tr. 24). Employing the "special technique" set forth by 20 C.F.R. § 404.1520a, the ALJ found that Mr. Moyers had only mild limitations in daily living activities, social functioning, and concentration, persistence, or pace, and found no episodes of decompensation of extended duration. (Tr. 25). In reaching his conclusion, the ALJ thoroughly discussed and cited to Mr. Moyers's daily living activities,

admissions, and medical evidence. Most notably, the ALJ cited to Mr. Moyers's April 23, 2013 Function Report, in which Mr. Moyers admitted that he can pay attention for eight hours, follow written and spoken instructions "very well," get along with authority figures "very well," and handle changes in routine "very well." *See id.*; *see also* (Tr. 279-80). Mr. Moyers also stated that he goes out with friends, goes to church every week, and serves as a greeter at his church. (Tr. 25); *see* (Tr. 278). Additionally, the ALJ evaluated the treatment notes of Mr. Moyers's treating physician, Dr. Andrew Gergely. *See* (Tr. 35) ("Dr. Gergely's clinical examination findings are granted controlling weight in finding a nonsevere psychiatric impairment."). In particular, the ALJ noted that Mr. Moyers's mental status examinations in 2013, 2014, and 2015 were "normal," and revealed "good" insight and "intact" judgment. (Tr. 33); *see, e.g.*, (Tr. 615) (March 22, 2013 mental status examination noting "Neat" appearance, "Euthymic" mood, "Organized" thought process, no suicidal or homicidal ideation, "Alert" and "Oriented" consciousness, "Good" insight, and "Intact" judgment); (Tr. 612) (February 21, 2014 mental status examination noting "Neat" appearance, "Euthymic" mood, "Organized" thought process, no suicidal or homicidal ideation, "Alert" and "Oriented" consciousness, "Good" insight, and "Intact" judgment); (Tr. 609) (February 20, 2015 mental status examination noting "Neat" appearance, "Euthymic" mood, "Organized" thought process, no suicidal or homicidal ideation, "Alert" and "Oriented" consciousness, "Good" insight, and "Intact" judgment). These findings, in addition to other records cited by the ALJ, provide substantial evidence to support the ALJ's determination that Mr. Moyers's mental impairments were non-severe.

Moreover, contrary to Mr. Moyers's contention, the ALJ's conclusions are not undermined by his summary of several medical records that indicated greater functional limitations due to depression and PTSD. Regarding the opinions of Mr. Moyers's social worker, Helena Weisl, the ALJ observed that Mr. Weisl "reported far more significant psychiatric symptoms related to pain and [PTSD] than [his treating physician] identified," (Tr. 33), that Ms. Weisl's treatment records were not in evidence, *id.*, and that Ms. Weisl was not an acceptable medical source as a licensed clinical social worker, (Tr. 35). Most significantly, the ALJ found that "Ms. Weisl's opinion does not reconcile with the claimant's self-reported activities of daily living and social pursuits." *Id. See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) ("The ALJ may choose to give less weight to the testimony of a treating [professional] if there is persuasive contrary evidence[.]"); *see also* SSR 06-03P, 2006 WL 2329939, at *2-6 (S.S.A. Aug. 9, 2006) ("For opinions from sources such as . . . social workers who are not medical sources, and other non-medical professionals, it would be appropriate to consider such factors as . . . whether the opinion is consistent with other evidence."). Regarding the opinions of Mr. Moyers's psychiatrist, Dr. Miles Diller, the ALJ noted the short duration of his treating relationship with Mr. Moyers, and concluded that, "[w]ith such a limited opportunity to interact with the claimant and explore his mental state from April 2015 through June 2015, Dr. Dillard's [sic] opinion is understandably influenced by [Mr. Moyers's] self-reported symptoms rather than direct observation over a prolonged period of time." *Id.*; *see* 20 C.F.R. § 404.1527 (2012) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion."); *see also Lang v. Astrue*, Civ. No. TJS-11-1909, 2013 WL 425064, at *3 (D. Md. Feb. 1, 2013) (characterizing a five-month treating relationship as "short-term" and "far from substantial").

Importantly, it is not the role of this Court to weigh conflicting evidence, determine credibility, or substitute its judgment for that of the ALJ. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Remand is therefore not warranted on this basis.

Next, Mr. Moyers argues that the ALJ failed to adequately support his RFC assessment with substantial evidence. Pl. Mot. 15. Specifically, Mr. Moyers contends that "[t]he most obvious errors within the RFC determination were the cursory conclusions made by the ALJ in dismissing treating physician and therapist opinions [of Dr. Diller and Ms. Weisl] found in the record." *Id.* at 17. A treating physician's opinion is given controlling weight, unless it is not supported by clinical evidence or is inconsistent with other substantial evidence. *See Craig*, 76 F.3d at 590. Similarly, the ALJ may consider the opinions of "other sources," including licensed clinical social workers. SSR 06-03p, 2006 WL 2329939, at *5; *see also Brunson v. Colvin*, No. ADC-16-1013, 2017 WL 1821088, at *7 (D. Md. May 4, 2017). The Commissioner must also consider, and is entitled to rely on, opinions from non-treating doctors. *See* SSR 96-6p, 1996 WL 374180, at *3 (S.S.A. July 2, 1996) ("In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources."). If the ALJ does not give a treating source's opinion controlling weight, the ALJ will assign weight after applying several factors, including the length and nature of the treatment relationship, the degree to which the opinion is supported by the record as a whole, and any other factors that support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(1)-(6); *see also Brunson*, 2017 WL 1821088, at *7 ("SSR 06-03p clarifies that the factors used to determine the weight to be accorded the opinions of physicians and psychologists ('acceptable medical sources') not given controlling weight also apply to the opinions of providers who are deemed to be at a different professional level ('other sources')[.]").

In the instant case, the ALJ explicitly discussed the findings and conclusions of both Ms. Weisl and Dr. Diller, and clearly articulated the reasons for not giving their opinions controlling weight. After extensively summarizing Ms. Weisl's opinions, the ALJ accorded "limited weight to Ms. Weisl's opinion as to [Mr. Moyers's] mental status." (Tr. 35). In addition to the above-referenced factors, the ALJ emphasized the significant inconsistencies between the opinions of Ms. Weisl and the opinions of Mr. Moyers's treating psychiatrist, Dr. Gergely. *Id.* The ALJ further observed: "That Ms. Weisl appears to credit the claimant's reported symptoms and the reasoning he provided to explain his psychiatrist's refusal to support [his] disability application is significant, given the normal examination findings in mental health records after [Dr. Gergely] prescribed amitriptyline." *Id.* Moreover, the ALJ concluded that Dr. Diller's opinions "[were] not deemed a reliable assessment of [Mr. Moyers's] mental status as of the alleged onset date or through the date of this decision." (Tr. 35). In addition to noting Dr. Diller's short-term treating relationship with Mr. Moyers, the ALJ found that Dr. Diller's medical opinions were inconsistent with the longitudinal records and functional reports in the record. (Tr. 35-36). *See Bostic v. Astrue*, 474 F. App'x 952, 953-54 (4th Cir. 2012). Moreover, the ALJ determined that Dr. Diller's opinion "does not reasonably relate the severity of impairment back to the alleged onset date," and that "the opinion does not demonstrate that the symptoms persisted at this severity for

*Kenneth Dale Moyers v. Commissioner, Social Security Administration*;
Civil No. SAG-17-357
January 5, 2018
Page 5

12 months or more despite treatment." (Tr. 36). In light of the evidence on the record, the ALJ properly supported his RFC determination with substantial evidence.

Finally, Mr. Moyers argues that, because the ALJ found "mild" limitation in concentration, persistence, or pace, he was required to "explain why he did not find any loss of productivity due to [Mr. Moyers's] mental health conditions." Pl. Reply 3 (citing *Free v. Colvin*, Civil No. TMD-15-1359, 2016 WL 5661651, at *6 (D. Md. Sept. 30, 2016)). This argument has no merit. As an initial matter, there is no requirement that a finding of "mild" difficulty in concentration, persistence, or pace must translate to a correlating limitation in the RFC assessment. *See Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015) (noting that "moderate" limitation in concentration, persistence, or pace at step three of the sequential evaluation may not translate into a RFC limitation in every case). Moreover, I am not persuaded by Mr. Moyers's contention that a "'mild' deficit in concentration, persistence, or pace is tantamount to a 10% deficit." Pl. Reply 3 (quoting *Free*, 2016 WL 5661651, at *6). Such precise percentages have no basis in the Social Security regulations.[2] *See* 20 C.F.R. § 416.920a(c). In any case, here, the ALJ adequately discussed why Mr. Moyers's mild limitation in concentration, persistence, or pace did not require a correlating RFC limitation. Specifically, the ALJ noted that, based on his own admissions, Mr. Moyers "could pay attention for eight hours and he followed written and spoken instructions very well." (Tr. 29); *see* (Tr. 279). The ALJ also observed that Mr. Moyers's extensive range of daily living activities "buttresses the inference that cognition and function are not as significantly or as frequently eroded by pain and medication side effects as [Mr. Moyers] suggest[s]." (Tr. 29).

For the reasons set forth above, Plaintiff's Motion for Summary Judgment [ECF No. 17] is DENIED, and Defendant's Motion for Summary Judgment [ECF No. 18], and Motion for Leave to File Surreply Memorandum [ECF No. 20], is GRANTED. The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion and docketed as an order.

Sincerely yours,

/s/

Stephanie A. Gallagher
United States Magistrate Judge

---

[2] To support his contention, Mr. Moyers cites to *Free v. Colvin*, in which the district court stated: "Case law suggests that a mild deficit in concentration, persistence, or pace is tantamount to a 10% deficit and that a moderate deficit in social functioning corresponds to a 10% to 20% deficit." Civil No. TMD-15-1359, 2016 WL 5661651, at *6 (D. Md. Sept. 30, 2016) (citing *Broder v. Comm'r of Soc. Sec.*, Civil Action No. 10-15162, 2012 WL 529944, at *3 (E.D. Mich. Jan. 24, 2012)). In *Broder*, the ALJ found that the claimant's RFC included "a mild, ten percent deficit in concentration, persistence and pace and a moderate, ten to twenty percent deficit in social functioning." 2012 WL 529944, at *3. As the Commissioner correctly notes in her surreply, the *Broder* court "merely quoted the ALJ's findings," rather than determining that a "mild" limitation in concentration, persistence, or pace amounts to a 10% deficit. *See* [ECF No. 21].